UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOYCE R. GARLAND-SASH, et al.,

               Plaintiffs,

         - against -

THE CITY OF NEW YORK, et al.,

               Defendants.
------------------------------------------------------------X

MEMORANDUM AND ORDER

04-CV-0301 (NGG)(LB)

**NOT FOR PUBLICATION**

GARAUFIS, District Judge.

    *Pro se* plaintiff Joyce Garland-Sash ("the Plaintiff") brings this action pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988 against the City of New York ("City") and its Administration of Children's Services ("ACS"), ten former and current City officials and employees ("the City defendants"), Westchester County employee Mayra Marquez,[1] Yonkers Police Officer Rozzi, and twenty-five John Does. The Plaintiff alleges that her constitutional rights, as well as those of her child, Sabrina Garland-Sash, were violated by the defendants' conduct relating to the investigation and prosecution of child neglect allegations made against the Plaintiff. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the County and the City[2] separately move to dismiss the Plaintiff's action on the grounds that her claims are barred

---

[1] As claims against a municipal employee in her official capacity are deemed brought against the municipality itself, this court construes the Plaintiff's action as also being brought against the County of Westchester. <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 226 (2d Cir. 2004).

[2] The City brings its motion only on behalf of the City, and not the individual City defendants, on the grounds that the City defendants have not been properly served. (Def. City Mem. of Law at 2 (citing C.P.L.R. § 312-a)). The County brings its motion of behalf of itself and Mayra Marquez (incorrectly named in the complaint as "Myra Marquez").

by the applicable statute of limitations and that they do not state a federal cause of action. For the reasons set forth below, the motions of the City and the County are GRANTED.

**I.     BACKGROUND**

The Plaintiff alleges that between December 9, 1999 and February 25, 2000, seven anonymous phone calls were made to the New York State Child Abuse and Maltreatment Register ("SCR") alleging that the Plaintiff was neglecting her daughter, Sabrina, and maintaining her Queens apartment in an unsanitary condition. (Am. Compl. ¶¶ 15 -17, 19-21.) The Plaintiff alleges that these calls were transmitted to ACS for investigation. (Id.)

In investigating these claims, the Plaintiff alleges that ACS and its employees: (1) disparaged the Plaintiff by leaving letters in plain view stating that the Plaintiff was subject to a child neglect complaint (Id. ¶¶ 32, 33); (2) threatened to violate the Plaintiff's unspecified "civil" and constitutional rights (Id. ¶ 53); (3) refused to accept proof that the Plaintiff did not reside in New York City (Id. ¶ 39); (4) deceived the Family Court judge by testifying that the Plaintiff was the subject of seven previously "indicated"[3] reports of child abuse and neglect (Id. ¶ 49); and (5) failed to provide proper training and supervision to ACS employees to stop the violation of the Plaintiff's constitutional rights. (Id. ¶¶ 52, 54, 59, 61, 63, 66, 70, 72-76, 79, 81-84.)

The Plaintiff alleges that between December 29, 1999 and January 5, 2000, the individuals at ACS assigned to the investigation filed false petitions and false affidavits in New York State Family Court in Queens County to have the Plaintiff arrested and her daughter removed. (Id. ¶ 18.) The Plaintiff further claims that her rights were violated on January 14,

---

[3] New York Social Service Law § 424(7) requires that, within 60 days of transmission of a report of child abuse or maltreatment, a local child protective service must determine whether a report is "indicated" or "unfounded." An "indicated" report is one in which "an investigation determines that some credible evidence of the alleged abuse or maltreatment exists." 18 N.Y.C.R.R. § 432.1(g).

2000, April 24, 2000, and April 25, 2000, when ACS employees along with New York City Police Department officers attempted to enforce "fraudulently obtained arrest warrants." (Id. ¶¶ 38, 42, 43.) The Plaintiff also claims that in the course of enforcing the warrants on April 25, 2000, ACS employees made false allegations about the Plaintiff's family to her neighbors. (Id. ¶ 45.)

The Plaintiff alleges that on February 27, 2000, ACS employees again gave false information under oath in order to obtain "a 'break-down' warrant" so that ACS could forcibly enter and inspect the Plaintiff's apartment, and that this warrant was executed on March 3, 2000 in violation of her constitutional rights. (Id. ¶ 40.)

The Plaintiff alleges that on May 25, 2000, she and her daughter "voluntarily surrendered" to New York State Family Court in Queens County, and the arrest warrant and remand order were vacated. (Id. ¶ 24.) The Plaintiff claims that during this and other court proceedings, ACS employees provided false testimony, thus defaming the Plaintiff, committed perjury, and otherwise violated the Plaintiff's constitutional rights. (Id. ¶¶ 46, 47, 49, 62.)

The Plaintiff alleges that on December 21, 2000, Queens County Family Court transferred the case to Westchester County Family Court. (Id. ¶ 27.) According to the Plaintiff, "in or around the end of January 2001," Westchester County Family Court sent a request to ACS inquiring whether ACS intended to proceed with its cause of action, (Id. ¶¶ 28, 64), but ACS delayed until the end of March 2001 to inform the court that the charge it filed against the Plaintiff was not credible and that it would not take any further action in the matter. (Id. ¶¶ 29, 65.) The Plaintiff alleges that the action against her was then dismissed by Judge Elitz of Westchester County Family Court. (Id. ¶ 29.)

3

With regard to Mayra Marquez, the Plaintiff alleges that Marquez divulged unidentified confidential and privileged information to former ACS Special Assistant Corporation Counsel Lisa Eulau and made unqualified medical and psychological diagnoses of the Plaintiff that were used in sworn affidavits against the Plaintiff. (Id. ¶¶ 87-88.) The Plaintiff alleges that these conversations occurred on January 5, 2000 and March 6, 2000. (Id.)

The Plaintiff filed the instant action on January 23, 2004. On July 2, 2004, I dismissed *sua sponte* the Plaintiff's claims against twenty-four defendants and instructed the Plaintiff to obtain counsel for her daughter within 60 days. Following the City's motion for a more definite statement, the Plaintiff filed an amended complaint dated April 13, 2005.

## II.     APPLICABLE LAW

### A.     Standard of Review for Motion to Dismiss

Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999). The test is not whether a plaintiff is likely to ultimately prevail, but whether the claimant is entitled to offer evidence to support its claims. Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998). The factual allegations in the complaint are presumed to be true, and all reasonable inferences are drawn in the plaintiff's favor. EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000).

Where a plaintiff proceeds *pro se*, a court must construe the complaint liberally and "interpret [it] to raise the strongest arguments that [it] suggest[s]." Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). See also

Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints should be "held to less stringent standards than formal pleadings drafted by lawyers."). However, statutes of limitations are strictly enforced, "even where the plaintiff is *pro se*." Hamilton v. Wilson, 2004 U.S. Dist. LEXIS 957, at *11 (S.D.N.Y. Jan. 21, 2004) (citing Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.")). "Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss" pursuant to Rule 12(b)(6). Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989).

     B.     **Section 1983**

Chapter forty-two U.S.C. Section 1983 allows citizens to sue a state official for the depravation of "any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983. Section 1983 does not create new rights; it merely provides a mechanism "for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citations omitted). "In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (citations omitted).

In New York, the statute of limitations for Section 1983 claims is three years. Connolly v. McCall, 254 F.3d 36, 40-41 (2d Cir. 2001). A Section 1983 claim accrues when the plaintiff

learns or has reason to learn of the alleged injury that is the basis of the action. Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994).

III. DISCUSSION

A. The Plaintiff's Claims Against the City

1. Section 1983

The bulk of the Plaintiff's claims against the City[4] stem from events alleged to have taken place between December 29, 1999 and September 11, 2000. (See Am. Compl.) It appears from the complaint that the Plaintiff knew or had reason to know of these acts at or about the time that they happened. Because the Plaintiff filed her complaint on January 23, 2004, to fall within the three-year statute of limitations period for a § 1983 claim, the acts alleged by the Plaintiff must have occurred after January 23, 2001. See Connolly, 254 F.3d at 40-41. Accordingly, those acts alleged by the Plaintiff that occurred between December 29, 1999 and September 11, 2000 are time-barred.

The Plaintiff's claim that her time-barred allegations fall within the continuing violation doctrine is unavailing. In the context of Section 1983 claims, "courts in the Second Circuit have viewed continuing violation arguments with disfavor." Curtis v. Airborne Freight Corp., 87 F.Supp.2d 234, 244 (S.D.N.Y. 2000). The continuing violation doctrine allows a plaintiff in certain circumstances to recover on the basis of an ongoing policy or practice of illegal activity initiated prior to the limitations period and applies to cases involving specific discriminatory

---

[4] In addition to the City, the Plaintiff names ACS as a party to this action. Claims against the City of New York's agencies, such as ACS, are deemed to be claims against New York City. New York City Code & Charter § 396; Preston v. State, 223 F.Supp.2d 452, 469 (S.D.N.Y. 2002). Because ACS is an agency of the City of New York and not a separate suable entity, the Plaintiff's claims against ACS are dismissed and are construed as claims against the City.

policies or mechanisms such as discriminatory seniority lists or discriminatory employment tests. Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993) (citations omitted). Here, the Plaintiff's Amended Complaint does not set forth a policy or practice of illegal activity on the part of the City.

Moreover, as set forth by the Second Circuit in Singleton:

> The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action. To permit [a plaintiff] to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims.

Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir. 1980). In the instant action, none of the violations asserted by the Plaintiff are of the type where the injury or violation was not immediately clear. Thus, there is no basis to apply the disfavored continuing violations doctrine to the Plaintiff's action against the City.

The Plaintiff's only non-time-barred allegation against the City is that ACS "deliberately delayed notifying [Westchester County Family] Court until the end of March 2001, that there was 'no credible evidence' to the charges that were originally filed..." (Am. Compl. ¶ 65.) The Plaintiff asserts that this "malicious delay in notifying the Court ... perpetuated the violations of the Plaintiff's civil rights and perpetuated the violations of the Plaintiff's constitutional rights and caused harm to the Plaintiffs." (Id.) The delay referred to by the Plaintiff spanned two months, from January 2001, the time at which Queens County Family Court determined venue was appropriate in Westchester County, to March 2001, the time at which ACS allegedly notified Westchester County Family Court of the merits of its case. (Id. ¶ 64.) The Plaintiff's allegation

7

does not state a claim under § 1983 because a two-month delay in responding to a court inquiry does not suggest that the Plaintiff was deprived of her "rights, privileges, or immunities secured by the Constitution or laws of the United States." See Pitchell, 13 F.3d at 547. Having failed to make any specific allegations indicating a deprivation of her constitutional rights, the Plaintiff's only non-time-barred § 1983 claim against the City is dismissed.

2. Other Federal Claims

The Plaintiff's additional federal claims under 42 U.S.C. §§ 1985, 1986, and 1988 are also without merit. Chapter forty-two U.S.C. § 1985 creates a cause of action for a conspiracy to violate civil rights. 42 U.S.C. § 1985. Because the March 2001 act alleged by the Plaintiff does not allege conspiracy the Plaintiff does not state a claim under § 1985.[5] Moreover, even if the Plaintiff did allege conspiracy in her complained of March 2001 injury, she only alleges conduct by city employees. There is no conspiracy under § 1985 where, as here, the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees. See, e.g., Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978).

Chapter forty-two U.S.C. § 1986 creates a cause of action for neglecting to prevent an actionable conspiracy under § 1985. 42 U.S.C. § 1986. A § 1986 claim must be predicated on a viable § 1985 claim. See Baines v. Masiello, 288 F.Supp.2d 376, 394-95 (W.D.N.Y. 2003).

---

[5] Since the Plaintiff's § 1985 claim rests on the same factual allegations as her § 1983 claim, the three-year statute of limitations also applies to bar all of the Plaintiff's claims save for her allegation that ACS delayed contacting Westchester County Family Court until March 2001. See Salahuddin v. Coughlin, 647 F. Supp. 49 (S.D.N.Y. 1986).

Since, as discussed above, the Plaintiff fails to state a viable § 1985 claim against the City, she cannot state a claim under § 1986.

Finally, 42 U.S.C. § 1988 is an attorney's fees provision that does not provide for a cause of action. 42 U.S.C. § 1988.

### 3. State-Law Claims

Liberally construing the Plaintiff's complaint, that Plaintiff appears to assert that the City's actions constituted libel, slander, disparagement of character, malicious prosecution, and the negligent and intentional infliction of emotional distress. Like her federal causes of action, the Plaintiff's state-law claims are also barred by the applicable statute of limitations.[6] In New York, the statute of limitations for actions against municipal defendants, such as the City, is one year and ninety days.[7] N.Y. Gen. Mun. Law § 50-i. The statute of limitations begins to accrue upon the "happening of the event upon which the claim is based." Id. The last actionable act alleged by the Plaintiff occurred on March 2001, approximately two years and ten months before her complaint was filed. Because none of the acts alleged by the Plaintiff fall within the

---

[6] Where, as here, a plaintiff's federal claims are dismissed, a federal court may dismiss pendant state-law claims without prejudice for review in state court. See Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001). Dismissal, however, is not required. Id.; 28 U.S.C. § 1367. As resolution of the Plaintiff's state-law claims in the instant action does not involve novel questions of state law, this court opts to consider them.

[7] General Municipal Law § 50-i provides: "No action or special proceeding shall be prosecuted or maintained against a city ... for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such ... city ... unless ... (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based." New York General Construction Law § 37-a defines "personal injury" to include "libel, slander and malicious prosecution; also an assault, battery, false imprisonment, or other actionable injury to the person either of the plaintiff, or of another."

9

limitations period set forth under New York General Municipal Law § 50-i for state-law claims against municipal defendants, the Plaintiff's state-law claims against the City are dismissed with prejudice.[8]

### B. The Plaintiff's Claims Against the County

#### 1. Federal Claims[9]

The Plaintiff alleges that Marquez, an employee of the Westchester County District Attorney's Office, disclosed unspecified "privileged and confidential information" and made unqualified medical and psychological diagnoses of the Plaintiff to New York City Special Assistant Counsel Lisa Eulau. (Am. Compl. ¶¶ 87-89). The Plaintiff asserts that Eulau based her requests for the arrest warrants and remand orders issued by Queens County Family Court on information supplied by Marquez, thereby making Marquez responsible for the issuance of these warrants and orders. The Plaintiff alleges that these conversations occurred on January 5, 2000 and March 6, 2000. (Id.)

---

[8] Assuming, *arguendo*, that the statutes of limitations applicable to non-municipal defendants apply to the City, nearly all of the Plaintiff's state-law claims would still be time-barred. The limitations period for libel, slander, disparagement of character, malicious prosecution and intentional infliction of emotional distress in one-year. N.Y. C.P.L. § 215(3). Negligent infliction of emotional distress claims are governed by a three year statute of limitations. N.Y. C.P.L. § 214. Only the City's alleged delay in contacting Westchester County Family Court would fall within the limitations period. A claim for negligent infliction of emotional distress must be premised upon a breach of duty which "unreasonably endanger[s] the plaintiff's physical safety." Green v. Leibowitz, 118 A.D.2d 756, 757 (2d Dep't 1986) (quotation omitted). As the Plaintiff has set forth no allegations meeting this standard, her claim for negligent infliction of emotional distress fails.

[9] In my July 2, 2004 Order, I held that the Plaintiff's complaint did not state a § 1985 or § 1986 claim against any defendants other than SCR employees and ACS employees. As Marquez is neither an SCR nor an ACS employee, the Plaintiff's §§ 1985 and 1986 claims against Marquez are dismissed with prejudice. I also note that the actions alleged by the Plaintiff with respect to Marquez are also outside the limitations period for claims arising under § 1985 and § 1986.

The Plaintiff's complaint was received on January 23, 2004, four years after the first alleged act and three years and ten months after the second alleged act. The Plaintiff knew of these conversations at or around the time they occurred, as she claims to have subpoenaed Marquez for the Queens County and Westchester County Family Court matters. Because all of the events alleged by the Plaintiff with respect to the County took place beyond the three-year limitations period for claims arising under § 1983, the Plaintiff's § 1983 claims are barred from review by this court.[10] Connolly, 254 F.3d at 40-41.

In any event, the Plaintiff's tenuous assertion that the decision to seek arrest warrants and remand orders from Queens Family Court had its genesis with Marquez, a Westchester County employee, does not implicate a deprivation of the Plaintiff's constitutional or federal rights. See Alfaro Motors, Inc. v. Ward, et al, 814 F.2d 883, 887 (2d Cir. 1987) (to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983). Thus, in addition to being time-barred, the Plaintiff fails to state a claim under Section 1983. Accordingly, the Plaintiff's federal claims against the County and Marquez are dismissed with prejudice.

2. State-Law Claims

The Plaintiff asserts that Marquez' actions "amounted to slander, disparagement of character and were done with deliberate indifference to the emotional distress" of the Plaintiff.

---

[10] The Plaintiff's claim that Marquez' actions fall under the continuing violation doctrine is without merit. As in her case against the City, discussed above, the Plaintiff appears to allege an ongoing discriminatory policy solely with respect to herself, which is not the type of claim envisioned under the continuing violation doctrine. See Lambert, 10 F.3d at 53.

11

(Am. Compl. ¶ 89.)  The Plaintiff's pendent state-law claims against the County and Marquez are dismissed with prejudice because the Plaintiff did not file a Notice of Claim with the County. In addition, all of the Plaintiff's state-law claims are outside the applicable statute of limitations.

The Plaintiff failed to affirmatively plead that she filed a Notice of Claim against the County or Marquez, as required under New York law when bringing a tort claim against a municipality or any of its officers, agents or employees.[11]  Hardy v. New York City Health and Hosps. Corp., 164 F.3d 789, 793 (2d Cir. 1999).  Instead, the Plaintiff only affirmatively alleges that she filed a Notice of Claim upon the City of New York, not the County.  Because the Plaintiff has not demonstrated that she filed a Notice of Claim upon the County or Marquez, her claims must be dismissed.  Hardy, 164 F.3d at 794.

In any event, the Plaintiff's pendent state-law claims are barred by the relevant statute of limitations.  The Plaintiff filed her complaint three years and ten months after the last alleged act committed by the County and Marquez.  As already discussed, the statute of limitations is one year and ninety days for tort claims brought against a county or its employees.  N.Y. Gen. Mun. Law § 50-i(c).  Even applying claim-specific statutes of limitations, the Plaintiff's claims are foreclosed.  The limitations period for slander, disparagement of character and intentional infliction of emotional distress is one year and the limitations period for negligent infliction of emotional distress claims is three years. N.Y. C.P.L. §§ 214, 215(3).

### C. Because Sabrina Garland-Sash Is a Minor Who is Not Represented by Counsel, Her Claims Are Dismissed

---

[11] While notice-of-claim statutes do not apply to Section 1983 claims, Cole v. New York City Police Dep't, 1998 U.S. Dist. LEXIS 12430, *25 n.3 (E.D.N.Y. 1998), they do apply to pendent state claims brought in a § 1983 action.  Fincher v. County of Westchester, 979 F.Supp. 989, 1002 (S.D.N.Y. 1997).

12

In this court's July 2, 2004 Order, I instructed the Plaintiff that if she did not obtain counsel for her daughter, Sabrina, Sabrina's claims would be dismissed. In the year since that order was issued, the Plaintiff has failed to retain counsel for her daughter. It is well established that a non-attorney parent may not bring an action on behalf of her minor child. See, e.g., Cheung v. Youth Orchestra Found., Inc., 906 F.2d 59, 61 (2d Cir. 1990). As set forth by the Second Circuit in Cheung:

> It goes without saying that it is not in the interests of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected. There is nothing in the guardian-minor relationship that suggests that the minor's interests would be furthered by representation by the non-attorney guardian.

Id. As the Plaintiff has not retained counsel for her daughter, all claims brought on behalf of Sabrina Garland-Sash are dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss by the City and the motion to dismiss by the County of Westchester are both GRANTED. The Plaintiff's claims against the City of New York and the Administration of Children's Services are dismissed with prejudice. The Plaintiff's claims against Mayra Marquez and the County of Westchester are also dismissed with prejudice. In addition, as the Plaintiff has not obtained counsel for her daughter, Sabrina J. Garland-Sash, Sabrina's claims are dismissed without prejudice. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: September 1, 2005                                  /s/ Nicholas G. Garaufis
       Brooklyn, New York                                 NICHOLAS G. GARAUFIS
                                                          United States District Judge